[7] That there is some evidence as to defendant's guilt must be conceded. We have nothing to do with its sufficiency under our appellate jurisdiction in criminal cases.

The motion in arrest of judgment was properly overruled. ·

The conviction and sentence are affirmed.

---

(113 So. 161)

No. 27474.

### GUARANTY BANK & TRUST CO. v. HEIDERICH.

· Jan. 3, 1927. On Rehearing April 25, 1927. Second Rehearing Denied May 23, 1927.

*(Syllabus by Editorial Staff.)*

**1. Bills and notes 520—Evidence of fraud in note given to plaintiff by stockholder borrowing money for use of corporation held overcome by proof.**

Evidence to sustain defense of fraud to note and mortgage given by defendant to plaintiff bank in borrowing money for use and benefit of a corporation of which he and the bank cashier were stockholders *held* overcome by proof of execution before maker's son-in-law, defendant's attendance at meeting of directors of corporation, and his subsequent conduct.

**2. Bills and notes 92(1)—Note, whose proceeds were placed to credit of corporation in which borrower was stockholder, held supported by consideration.**

Note *held* supported by consideration, where proceeds were placed at payee bank to credit of corporation for whose benefit the maker, a stockholder in the corporation, borrowed the money.

### On Rehearing.

**3. Limitation of actions 155(3)—Prescription; stockholder's note held barred after five years from maturity, notwithstanding payments after maturity by corporation for whose benefit it was given (Civ. Code, arts. 2997, 3540).**

Action on note given to bank by stockholder in a corporation, for benefit of the corporation, with definite understanding that corporation would pay it, *held* barred after five years from maturity, under Civ. Code, art. 3540, notwithstanding payments within five years by the corporation; authority to pay the note at maturity not being authority to interrupt prescription by partial payments, under article 2997, providing that power to acknowledge a debt must be express or special.

**4. Limitation of actions 155(1)—Prescription; part payment on note, to toll statute of limitations, must be by debtor or. under his authority.**

A part payment on a note, to toll the statute of limitations, must be made by the debtor or by another under his authority.

Overton, J., dissenting on rehearing.

Appeal from Ninth Judicial District Court, Parish of Rapides; Leven L. Hooe, Judge.

Action by the Guaranty Bank & Trust Company against David J. Heiderich. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Bruton T. Dawkins and William O. Roberts, both of Alexandria, for appellant.

Hakenyos, Scott, Provosty & Staples, of Alexandria, for appellee.

OVERTON, J. This is a suit on a promissory note, dated May 29, 1917, for the sum of $6,000, made by defendant, payable to the order of the Bank of Boyce on or before October 1, 1917, indorsed by the payee to plaintiff herein, bearing 8 per cent. per annum interest from date, containing the usual clause of 10 per cent. attorney's fees, and subject to alleged credits for the payment of interest up to January 29, 1921, and to a credit of $792, paid September 2, 1923. The note is secured by mortgage on certain real property in the town of Boyce, and the suit is for the balance alleged to be due on the note, and to enforce the mortgage.

The suit is defended upon the grounds that defendant was induced to execute the note and mortgage by fraudulent means; that the note is without consideration, and hence so is the mortgage; and, in the event it is held that these defenses are not well founded, then that the note is prescribed by the prescription of five years, and, this being so, that the mortgage falls with the note which it was given to secure.

The record discloses that the Boyce Lumber & Realty Company, which was operating a sawmill near Boyce, needed funds to conduct its business. The company was apparently not in a very flourishing condition, though it was considered solvent, and it was thought that it would overcome its difficulties and eventually meet with success.

J. A. Texada was president of the company and had loaned it $6,500. J. Dawson Johnson was a member of the company's board of directors, was the company's secretary and treasurer, and was also cashier of the Bank of Boyce. He was one of defendant's particular friends, and often advised him in business matters. He had loaned the company $6,000. Defendant owned $2,000 worth of the company's stock, was a member of its board of directors, and was the company's vice president. These three owned the greater part of the stock of the company and controlled its affairs, though defendant owned considerably less of the stock than did the other two.

Apparently the bank did not feel in position to lend the Boyce Lumber & Realty Company the $6,000 that it desired. Defendant, however, knew that Johnson had loaned the company a like amount, and probably that Texada had loaned it a somewhat larger amount, and, as we find from the evidence adduced, though it is conflicting on practically every material point in the case, defendant consented to lend the company the $6,000 that it needed, provided he could raise the necessary funds on his property. The Bank of Boyce agreed to lend defendant the money. The loan was to be secured by mortgage on certain real property, belonging to defendant, in Boyce.

On May 29, 1917, the day appointed for the making of the note and the granting of the mortgage, defendant, his son-in-law, Philip Henderson, and the notary, F. D. Henderson, who was the latter's father, went to the bank for the purpose of executing the note and mortgage. The mortgage, we gather, was prepared before the parties met at the bank to pass it. When they met, it was signed by defendant personally, and by the bank, through its president, after, according to a recital in the mortgage, it had been read to the parties, and the note was then signed by defendant. After the note had been signed by him and paraphed by the notary, it was delivered to Johnson; defendant stating, at the time, that Johnson knew what to do with it.

On the day of the execution of the mortgage, Johnson notified Texada that defendant had made arrangements to lend the Boyce Lumber & Realty Company the $6,000 which the company was desirous of borrowing, but that defendant wanted some evidence of the loan he was making, and to come to Boyce prepared to satisfy him in regard thereto. Upon the same day a meeting of the board of di-

rectors of the Boyce Lumber & Realty Company was held at Boyce, at which Texada, Johnson, and defendant appear to have been present. The loan was discussed at the meeting, and a resolution was passed, authorizing the execution of a second chattel mortgage on a quantity of lumber belonging to the company, to secure a note to be given defendant, evidencing the loan he was to make the company with the money borrowed by him from the bank. Thereafter the president of the company made a note in favor of defendant for the amount of the loan, and before Henderson, the notary, signed a chattel mortgage to secure it, and left the mortgage to be accepted by defendant, and the note to be delivered to him. Later, according to Johnson's evidence, defendant went to the bank, and delivered the note and chattel mortgage to him, as cashier, for safe-keeping therein, though, when he delivered it, as appears from the mortgage itself, he did so without signing it, to indicate his acceptance thereof.

On the day following the execution of the mortgage in favor of the bank, on which the latter, as we find, had agreed to lend defendant the money, which he, in turn, had consented to lend to the Boyce Lumber & Realty Company, and in accordance with an understanding had between Johnson, as cashier of the bank, and defendant, the former deposited the $6,000, which the bank had agreed to lend defendant, to the credit of the Boyce Lumber & Realty Company, thus perfecting the loan by defendant to the company.

It was understood and agreed that the Boyce Realty & Lumber Company would pay the note, made by defendant, in favor of the bank, and that the retirement of that note by the company would have the effect of retiring the note, made by it in favor of defendant. Johnson was fully cognizant of this agreement, and, in making demands for payment, these demands were made only on the Boyce Lumber & Realty Company, and no demand was made on defendant until 1924,

163 LA.—31

after the company had been placed in the hands of a receiver. Interest was paid on the note, by the company, in 1918, up to May 29th of that year; in December, 1919, up to May 29, 1919; during the following year, up to May 29, 1920; and in January, 1922, up to January 29, 1921. It is also shown by an indorsement on the back of the note that interest was allowed to February 1, 1922, and the evidence discloses that the note is entitled to a credit of $792, paid September, 2, 1923.

The foregoing are the facts as we find them. Our findings, however, are not in accord, in material respects, with defendant's version and with the evidence produced by him. His contention is that the mortgage was not read to him; that Johnson, at the time of its execution, said it was needless to read it, as he (defendant) knew all about the matter. He concedes that he signed the mortgage and the note, but denies that he had any intention to bind himself personally, and insists that, under representations made by Johnson to him, the Boyce Lumber & Realty Company was to be the borrower, and that he was merely to act for the company, since Johnson advised him that he himself could not act both for the bank and the company; that he does not recall that he ever attended a meeting of the directors of the company at which a loan that he was to make the company was discussed, and at which a resolution was passed authorizing the company to grant a chattel mortgage to secure the loan; and that, when his son-in-law, Philip Henderson, delivered to him the chattel mortgage and the note, left by Texada to be delivered to him, that he took them to the bank, and delivered them to Johnson, telling the latter that he had no money to lend to the company; that, besides, the company had borrowed $6,000 from the bank the day before, and to destroy the note and mortgage.

[1] In our view, as we have virtually said by stating the facts as we find them to be,

the evidence does not support defendant's contentions. In fact, in our opinion, it shows to the contrary. It is most unlikely, we think, that Johnson, if he had any intention of perpetrating such a fraud, would have attempted to perpetrate it by an act to be passed before a notary who is the father-in-law of the son of the intended victim, and with the son-in-law as an attesting witness, brought there to witness the act, when by a mere reading of the act the fraud would be disclosed to the intended victim. The danger of detection would appear, at once, to be too great. Moreover, we think that the act was read. The notary recites in it that this was done, and we think that the evidence of Johnson and of Joyner, the president of the bank, establishes that it was read. We also think, as testified to by Johnson and Texada, that the meeting of directors of the Boyce Lumber & Realty Company was held on the same afternoon that the mortgage, granted by defendant, was passed; that defendant was present at the meeting; that the loan that he was to make with the money he had just borrowed was discussed there; and that it was there again understood that the company would pay the note, signed by defendant. This of itself, in the absence of an expression of surprise or protest at the time by defendant, is sufficient to indicate that he had knowledge of the fact that, when he signed the note and mortgage, he was binding himself personally, and that he had such knowledge is also suggested by the fact that he signed his name personally to the note and mortgage, and not as an officer or agent of the company.

[2] Our conclusion is that the evidence adduced by defendant to show fraud has been overcome. Our conclusion is also that, as the Bank of Boyce let defendant have $6,000 on the mortgage note, which sum, at his instance, was placed to the credit of the Boyce Lumber & Realty Company, the plea of want of consideration is not well founded.

The next question to be considered is the plea of prescription. A promissory note prescribes five years from the date of its maturity. C. C. art. 3540. The note, in this instance, matured on October 1, 1917, and suit was not filed until August 7, 1924. Hence more than five years elapsed between the maturity of the note and the filing of suit, and therefore between the former date and the service of citation. However, prescription on a promissory note may be interrupted by a payment made on the note. The payment must be made, however, by the debtor or by another with his authority. No interruption will result from a payment made by a third person without the authority of the debtor. Smith, Administrator, v. Coon, 22 La. Ann. 445. In the case at bar, as we have seen, payments were made on the note. None, however, were made by defendant, but only by the Boyce Lumber & Realty Company. We have found, however, that it was understood and agreed by defendant and the company that the latter should pay the note. Hence, when the company made payments thereon, it made them with defendant's express authority. The payments made by the company in 1918, 1919, and 1922, which we consider established, were each made before the expiration of five years from the maturity of the note, and, such being the case, the effect of each was to interrupt prescription, and to make it run anew from the date of the last payment, and to place the payment made in 1923 in the category of a payment made before prescription had accrued, and to cause it to interrupt prescription. It is obvious that the suit was filed and that citation was served within five years from the last payment, and, for that matter, even from the payment made in 1922. Therefore the plea of prescription, in our opinion, is not well founded.

The trial judge rendered judgment for plaintiff. He, however, allowed interest from January 29, 1921. We think he should have

allowed it instead from February 1, 1922, for the note has indorsed upon it an allowance of interest up to that time. The judgment will be amended accordingly.

For the reasons assigned, the judgment appealed from is amended, by allowing interest at the rate of 8 per cent. per annum from February 1, 1922, until paid, and, as amended, it is affirmed; appellee to pay the costs of this appeal.

O'NIELL, C. J., dissents, on the ground that the holder of the note allowed it to prescribe as far as this defendant is concerned.

### On Rehearing.

BRUNOT, J. This is a suit upon a promissory note, dated May 29, 1917, payable on or before October 1, 1917, with interest at 8 per cent. per annum from date, and secured by mortgage on certain real property. The note and mortgage were made and executed by the defendant. The defenses to the suit were fraud, want of consideration, and the plea of prescription. The judgment of the trial court was in favor of plaintiff. In our original opinion the judgment appealed from was amended with respect to the date from which interest on the note should be computed, and, as thus amended, it was affirmed. On the application of defendant a rehearing was granted for the limited purpose of again considering defendant's plea of prescription. The money, which is represented by the note sued upon, was borrowed by defendant for the use and benefit of the Boyce Lumber & Realty Company, a corporation of which defendant was a stockholder, director, and officer, and the note was to be paid by the corporation. The entire agreement and understanding of the interested parties is minutely detailed in our original opinion, and need not be repeated here, for we are now concerned only with defendant's plea of prescription. The record does not disclose that any authority was conferred upon the corporation by the defendant, with reference to the note, except such as was given at the time of its execution and coincident with its issuance, and the only authority then conferred upon the corporation was *to pay the note.* When the note fell due, October 1, 1917, it was not paid, and no demand for its payment was made upon defendant until 1924, or about seven years thereafter. The plaintiff held the note, and during the years from its date to January 29, 1921, the Boyce Lumber & Realty Company paid the accrued interest thereon. Subsequent to that time the corporation went into the hands of a receiver, and following this incident, the plaintiff made a demand upon the defendant for the payment of the note. The demand was resisted and this suit followed. In our original opinion we said:

"The next question to be considered is the plea of prescription. A promissory note prescribes in five years from the date of its maturity. C. C. art. 3540. The note, in this instance, matured on October 1, 1917, and suit was not filed until August 7, 1924. Hence more than five years elapsed between the maturity of the note and the filing of suit, and therefore between the former date and the service of citation. However, prescription on a promissory note may be interrupted by a payment made on the note. The payment must be made, however, by the debtor or by another with his authority. No interruption will result from a payment made by a third person without the authority of the debtor. Smith, Administrator, v. Coon, 22 La. Ann. 445. In the case at bar, as we have seen, payments were made on the note. None, however, were made by defendant, but only by the Boyce Lumber & Realty Company. We have found, however, that it was understood and agreed by defendant and the company that the latter should pay the note. Hence, when the company made payments thereon, it made them with defendant's express authority."

[3] The foregoing excerpt from our original opinion contains an accurate statement of law and fact, but the conclusion we express therein, that because "it was understood and agreed by defendant and the company that the latter should pay the note. Hence, when

the company made payments thereon, it made them with defendant's express authority"—is erroneous. There is no substantial foundation upon which to rest that conclusion. Authority to a third person, given before maturity, merely to pay a note at maturity (that is what defendant in this case did), is not authority to pay the accrued interest thereon, or to partially pay the note after its maturity. In such a case as is presented here, to interrupt the prescription which began to run at the maturity of the note, it must appear that the maker, after its maturity, authorized a payment thereon. A payment without such authority is not an acknowledgment of the debt, and such an acknowledgment is necessary to interrupt prescription. Article 2997, R. C. C., provides that the power to "contract a loan or acknowledge a debt must be express and special."

Counsel for appellant cites Webster v. Harman, 148 La. 1080, 88 So. 462. This case has application, for it holds that the power to acknowledge a debt must be express and special. The court said:

"A power of attorney, authorizing an agent to sell stock, did not authorize him to give it in payment of his principal's debt; for, however much a dation en paiement may be likened to a sale by Civ. Code, art. 2446 and 2659, there is a difference between them, in that, before a dation en paiement can be made, the existence of a debt must be acknowledged, and the power to do this must be express and special under Civ. Code, art. 2997."

[4] From other authorities cited we quote the following:

"Payment by an agent is effectual to suspend the statute of limitations only when the agent is specially authorized to make it." 37 Corpus Juris, 1162, and authorities therein cited.

"In the case of a part payment by a stranger, or by a person not authorized to represent the debtor, it is obvious that there is no ground for assuming that it is an admission of an existing liability on his part, or for inferring a new promise by him to pay the balance of the debt. Therefore, inasmuch as such payments, to remove the bar of the statute, must have the effect of an acknowledgment of the debt, or new promise, they should be made by some person who had the right to acknowledge it, or to make the new promise, which principle requires that the payment must either be made by the debtor himself or by an authorized agent. A creditor, therefore, cannot be made the agent of the debtor to such an extent as to make the act done by him operate as a new promise to himself. So neither an amount collected by a creditor and credited on the debtor's account without authority from the debtor can be considered as creating a mutual contract, so as to put the statute of limitations in motion from the last item." 17 Ruling Case Law, p. 935.

"Defendant made a note payable to his wife, which she indorsed, and defendant's son, who is a director in the bank of which plaintiff was receiver, procured it to discount the note, the money being paid to defendant. Thereafter payments of interest within the period of limitations were made by the son directing the cashier of the bank to apply the dividends due to defendant's wife on certain shares of the bank's stock standing in her name; but there was no evidence tending to connect defendant with such payments, except the declaration of the bank's cashier, as a witness, that the son was acting as his father's agent throughout the transaction. Held, that the evidence was insufficient to show that the payments of interest were made with defendant's authority and consent, and were therefore insufficient to stop the running of limitations as against him." Schofield v. Twining (C. C.) 127 F. 488.

"A part payment, to toll the statute of limitations, must have been made as part payment of the obligor, or some one at his direction, and under such circumstances as to amount to an acknowledgment of an existing liability." Good v. Ehrlich, 67 Kan. 94, 72 P. 545.

See, also, Patterson et al. v. Collier, 113 Mich. 12, 71 N. W. 327, 67 Am. St. Rep. 440.

For these reasons, the judgment appealed from and the decree of this court heretofore rendered herein are avoided and set aside, and it is now ordered and decreed that plaintiff's demands be rejected, and this suit dismissed, at its cost.

It is further ordered and decreed that the note sued upon and the mortgage given to secure the payment of said note be and they are hereby declared null and void, and the clerk and recorder of Rapides parish, Louisi-

ana, is ordered to cancel and erase said mortgage from the records of his office. The right is reserved to appellee to apply for a rehearing.

ÒVERTON, J., dissents, adhering to original opinion handed down herein.