## AMITE BANK & TRUST CO. v. FIELD.
### No. 959.

Court of Appeal of Louisiana, First Circuit.
May 3, 1932.

S. S. Reid, of Amite, for appellant.

R. D. Magruder, of Amite, for appellee.

LE BLANC, J.

This is a suit on a promissory note against which the defendant pleads the prescription of five years (Civ. Code, art. 3540). The lower court sustained the plea and dismissed the suit, and plaintiff has appealed.

The note sued on is for the sum of $2,217.77, and is subject to certain credits indorsed on it which reduce it to $1,575.96. It is dated "Amite, La., 3/26/25," and is payable to the order of the Security Bank on demand. It is signed by the defendant, and originally it was secured by the pledge and delivery of 277 shares of the First State Bank & Trust Company of Hammond, La., belonging to the estate of R. Lillie. The payments indorsed on the note are as follows: "4/29/27, $95.00.; 10/17/27, $427.70; 1/12/27, $119.51." The Security Bank to whose order the note was made payable was taken over by the Amite Bank & Trust Company, present holder of the note.

The proof shows that a certain number of individuals formed a pool for the purpose of buying stock in the First State Bank & Trust Company of Hammond. Those participating in the pool were R. A. Kent, Ray D. Magruder, H. P. McClendon, and Wade J. Garnier. The defendant had no interest in the pool, and signed the note here sued on as an accommodation for those who were. He made the pledge of the 277 shares of stock as appears by the indorsement thereof on the note, but that collateral was subsequently released by Wade Garnier, who was cashier of the Security Bank. There is no record made of the date of that release. We will, however, have to fix the time as near as possible, as it is a very important circumstance in considering the plea of prescription. We will refer to that later. Other than knowing that he signed the note and pledged the stock and that this stock was later released, the defendant knows nothing much about the transaction. He denies most positively that he owes the note and that he ever made any of the payments indorsed on the back of it, or that any of the said payments were ever made for him, or with his knowledge and consent. The note bears a further indorsement to the effect that it is secured by the pledge of other shares of stock of the First State Bank; but in the indorsement itself these shares are listed as belonging to W. J. G. (who is shown to be Wade J. Garnier) and W. L. Houlton. The defendant knows nothing of this alleged pledge.

It is conceded that, on a note that is made payable on demand, prescription begins to run from its date, unless it is interrupted or suspended by a payment or acknowledgment. As before stated, the note is dated March 26, 1925, and this suit was filed December 6, 1930. The issue before us then is, Was there a suspension or interruption of prescription?

Counsel for plaintiff contends in the first place that prescription remained suspended because of the pledge of the stock which remained in the possession of the pledgee. As a further ground on which to base his contention that prescription had been interrupted, he points to the fact that the ledger sheet of the Security Bank, offered and filed in evidence, shows that on October 17, 1925, the account of estate of R. A. Kent received a certain sum which he contends was the proceeds derived from the transfer of the stock originally pledged with the note sued on, and that on the same day the account was charged with two accounts; one of which was used to

pay the note of one of the participants in the pool in full, and the balance of $427.70, being the exact amount of the payment, was credited on the note sued on, as of that same day. The assumption is as he contends; that, in the absence of any other explanation, such payment was made from the proceeds of the sale of the pledged stock, and therefore operates as an interruption of the prescription which is pledged.

Counsel's contention that prescription did not run as long as the bank held the collateral that was pledged to the note is a correct statement of a legal proposition which is conceded by counsel for defendant. Unfortunately for the plaintiff bank in this case, however, it is shown, by an indorsement on the note itself, that it did not retain possession of the pledged security. This appears from the release thereof which is signed by Garnier, cashier of the bank. As heretofore stated, there is no record made of the date on which that release was given, but it is a most important factor, because, if the suit was filed within five years of that date, prescription had not yet accrued. There is some testimony to the effect that it may have been on June 15, 1925, which of course would be more than five years before the filing of the suit. As a matter of fact, we think that by Garnier's testimony the date can be fixed as of a time before that. He says that Mr. Kent, who was the financial manager of the pool, was about to undergo an operation. The whole scheme, it seems, had to be refinanced, and, as they were uncertain of the outcome of Mr. Kent's operation, it had to be attended to before he went to the hospital. This, he says, was in the early part of the year, meaning (1925) probably in May. We can easily arrive at the conclusion therefore, that this release was made several months before December 6, 1925, from which date we must begin in order to fix the five years' prescription. With regard to the pledge of the other stock which was made later, the testimony shows that they were attached to the notes of Garnier himself, who details the circumstances under which that was done. He says that he doesn't think the defendant knew anything about this subsequent pledge, and in view of the latter's positive denial that he had anything whatever to do with it, or knew anything about it, it would be difficult to hold that it constituted an interruption of prescription as to him.

The testimony contains nothing that we can see that in any way connects the defendant directly or indirectly with the payments on the back of the note; the one made on October 17, 1927, being relied on to show an interruption of prescription. Garnier does not recall definitely the circumstances surrounding this payment, although he admits that he made the other two. He does testify that the indorsement is made in the handwriting of Vince Currier, who evidently had some connection with the bank. But there is nothing to indicate that the defendant was in any way interested in the estate of R. A. Kent, or that he authorized the payment in any manner. Under the facts as we find them concerning this payment, it created no interruption of prescription against the defendant. Guaranty Bank & Trust Co. v. Heiderich, 163 La. 957, 113 So. 161. The case of Bank of Slidell v. Gause, 157 La. 128, 102 So. 93, cited by counsel for plaintiff, presents features which we do not find in this case, and we do not believe it serves as authority.

We are of the opinion that the judgment of the lower court correctly sustained the plea of prescription and rejected plaintiff's demand, and it is therefore affirmed.