NEW ORLEANS, MAY, 1881. 705

State of Louisiana vs. Citizens' Bank of Louisiana.

## No. 7910.

### THE STATE OF LOUISIANA VS. THE CITIZENS' BANK OF LOUISIANA.

The stipulation in an act of sale, that the amount paid by the vendor to insure the property sold, in case the purchaser neglects to do it, shall be secured by privilege on the property, has no legal effect whatever, as privileges can only be created by law and not by the agreement of parties.

And the stipulation in the same act of sale, that said premiums of insurance shall be secured by mortgage upon the property, is equally of no avail to the vendor, if the amount and rate of insurance are not fixed in the act. The mortgage in such case is not for an *exact* sum, as required by law, and is, therefore, invalid.

The pact *De non alienando* in an act of mortgage does not prevent a subsequent purchaser of the property mortgaged, from contesting the very validity of the mortgage itself. Such purchaser has acquired the property subject to the pact, provided the mortgage is real and valid; but if it is not, the pact is itself of no effect.

APPEAL from the Sixth District Court for the parish of Orleans. *Rightor, J.*

*J. C. Egan,* Attorney General, for Plaintiff and Appellant:

To render a conventional mortgage valid it is necessary that the exact sum for which it is given shall be declared in the act. C. Code, article 3309; 2 An. 790; 9 R. 482; 17 An. 60.

*Gibson, Hall & Montgomery* for Defendant and Appellee.

First—A mortgage stipulating that the property shall be insured by the purchaser, in a sum sufficient to secure the holder of the notes given as part of the purchase price, and that the property shall be kept so insured, and the policy transferred to the vendor, or holder of the notes, and that the holder of the notes is authorized to so insure in default of the insurance by the purchaser, etc., is a valid mortgage for the amount, including the premiums of insurance so paid by the vendor or holder of the notes and attorney's fees, in the aggregate, under article 3309 C. C.

Second—Such a mortgage secures the insurance premiums so paid, as part of the purchase price, as well as attorney's fees incurred in case of foreclosure.

Third—A valid mortgage can be stipulated to secure the fulfillment of an obligation, or for the performance of an act, and in that respect articles 3291 and 3309 C. C. do not conflict where the performance of an act is to be secured as well as another stipulated sum.

Fourth—Such a mortgage, with the pact *de non alienando*, secures the holder of the mortgage whether he is the vendor himself or a subsequent holder.

*F. C. Zacharie,* on same side, on application for rehearing:

First—The decision of the Court, if allowed to stand, will overturn a well established rule of property, which courts should never do, unless for the most cogent reasons.

Second—A clause in a mortgage to reimburse the mortgagee for premiums of insurance paid by him, is an obligation incidental to the principal or primary contract, and as such its exact amount need not be specified.

Third—Under article 3290, C. C., which is borrowed from the Spanish law, and is not found in the C. C. of 1808, nor in the Code Napoleon, the exact amount need not be specified in the act of mortgage.

*Miller, Finney & Miller,* on same side.

The opinion of the Court was delivered by

FENNER, J. The Citizens' Bank sold to the New Orleans National

45

Building Association the property then known as the St. Louis Hotel, at a price paid partly in cash and partly in notes.

The act contained a stipulation by which the vendee was bound to keep the property "constantly insured in an amount satisfactory to the holders of said notes (for the price), in one of the solvent insurance companies of the city, until the final payment of said notes; * * and should the said purchasers fail or omit to cause said insurance to be effected, any holders of said notes are fully authorized to effect insurance thereon at the cost, charge and expense of said purchasers, who obligate themselves to reimburse the premiums of insurance so paid, which are declared to be a privilege on the proceeds of the sale should the mortgage granted be foreclosed."

It had been stipulated in a prior clause that, "to secure the payment of said notes in capital and interest, in default of payment, premiums of insurance and attorneys' fees, hereinafter provided, special mortgage, with vendor's lien and privilege, is hereby retained on the property in favor of all holders of said notes, etc."

The Building Association subsequently sold the property to the State, which assumed payment of the above notes for the price, and has actually paid them. Thereafter, the Citizens' Bank, having paid insurance according to the stipulations of the first act of sale, brought suit, via ordinariâ, against its vendee, the Building Association, and recovered judgment for the amount thereof, with privilege and mortgage on the property sold and then owned by the State.

Upon this judgment the Bank caused to issue a writ of *fi. fa.*, under which the property thus held by the State was seized and advertised for sale, when the State brought this suit for an injunction against said proceedings.

The ground of the injunction is, that the Bank has no valid mortgage on the property for the amount of the insurance paid, because in the act of mortgage no sum was declared, in or within which said insurance might be effected.

The investigation must be confined to the question of the validity of the *mortgage*. The *privilege* claimed by the bank has no foundation. The mere perusal of the act shows that the insurance formed no part of the stipulated *price* of the property, and, therefore, was not covered by the vendor's lien and privilege ; and privileges being creatures of the law and not of conventions, the mere declarations in the act that the insurance premiums should bear a privilege on the property, are without effect.

We have searched in vain for any principle or precedent upon which the mortgage claimed can be entertained.

The Code provides : "To render a conventional mortgage valid, it

is necessary that the exact sum for which it is given shall be declared in the act." Rev. C. C. 3309.

Beyond a doubt, this article applies to every conventional mortgage, whatever be the nature of the "engagement," the execution of which it is intended to secure, whether it be the payment of a liquidated debt, of an uncertain and contingent liability, or even the performance of an obligation to do or not to do. Rev. C. C. 3290-1-2.

In every case the "exact sum," to the extent of which the property is presently or contingently encumbered, must be declared in the act. If the obligation secured be uncertain as to its amount, or contingent as to its existence, the ultimate liability will, of course, only be fixed when it shall be liquidated, or when the condition, on which its existence depends, shall have happened. But, for the validity of the mortgage, it is essential that some exact sum, agreed on between the debtor and creditor, as the limit of the security, shall be declared in the act.

The corresponding article of the Code Napoleon (2132), after using the same language contained in our article, adds the following :

" Si la créance résultant de l'obligation est conditionnelle pour son existence, ou indéterminée dans sa valeur, le créancier ne pourra requérir l'inscription que jusqu'à concurrence d'une valeur estimative par lui déclarée expressément, et que le débiteur aura droit de faire réduire, s'il y a lieu."

The effect of this provision is that, where the obligations are of the character above mentioned, the mortgage may have effect, as between the parties, without any fixing of the amount ; but it cannot be inscribed or have any effect as to third persons, until an estimated amount be fixed in the mode stated.

See 2 Paul Pont Priv. et Hyp., pp. 699 *et seq.*

The framers of our Code discarded all distinctions between parties and third persons, and required a certain sum to be fixed in the act as an essential to the validity of the mortgage in any sense.

The question has been not infrequently considered by this Court, and has been invariably determined according to the views here indicated.

Linton vs. Purdon, 9 Rob. 482 ; 2 An. 790; 17 An. 60; 2 An. 249; 3 An. 112, 663; 21 An. 607.

There has never been, to our knowledge, even a suggestion of a contrary view, and considering the plain language of article 3309, we see not how a different opinion could be entertained.

The stipulation for attorneys' fees, where the *percentage* is fixed, is valid. Although the amount on which suit may be required may be uncertain, it can never exceed the amount of the mortgage, and a fixed percentage on this maximum is the " exact sum " within which the mort-

gage is limited, as in the property-bank cases (2 An. 249; 3 An. 112, 663), where, although the amount of the loans actually made was not stated in the mortgage, yet as the amount of the stock was stated and the charter of the bank limited the loans to one-half the stock, the latter amount was considered as the sufficiently indicated maximum within which the loan mortgage was limited.

But here, the only limitation as to the amount for which insurance may be taken is " an amount satisfactory to the holders of the notes," and no stipulation whatever is made as to the rate of premium. It is clear, therefore, that the act contains no declaration of the " exact sum " of this item, and none by which any " exact sum " can be fixed.

This disposes of the case.

The contention that, because the mortgage contained the pact de non alienando, therefore, the judgment obtained by the bank against the original mortgagor recognizing the mortgage on this property, is res judicata against the State, which was no party to that suit, has no merit whatever.

A purchaser of property, subject to mortgage with or without the pact, acquires it subject only to the mortgage actually existing thereon. The presence of the pact does not make that a mortgage which is not a mortgage. It gives the right to the mortgagee to enforce his mortgage by proceedings directly against the mortgagor, without regard to alienations by the latter, but what he may so enforce is a real, and not a pretended mortgage. Whenever he lays hand on the property belonging to a third person, whether under an order of seizure and sale or under a fi. fa. on judgment, in proceedings against the original mortgagor alone, such third person may protect his property from being subjected to the satisfaction of a claim for which it is not lawfully liable, and can be debarred of no defense by any proceedings between others, to which he was not a party. It is not true that he can set up no defenses which the mortgagor could not; for he may defend an absence or insufficiency of inscription, which defense would not be open to the mortgagor. But, in addition, he may oppose all defenses which the mortgagor could have opposed, at least if not personal to the latter; and the mortgagor cannot deprive him of these by waiver or otherwise; nor can his right to urge them be affected by any judgment to which he is not a party.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and it is now ordered, adjudged and decreed that there be judgment in favor of the State of Louisiana and against the defendants, maintaining and perpetuating the injunction herein issued, and that the Citizens' Bank of Louisiana, defendant, pay costs in both courts.

Rehearing refused.