LAND, J.
 

 On April 11, 1927, the defendant, J. I. Biggs, sold to Melvin F. Johnson, for a consideration of $1,000, lots 89 and 90 of the W. K. Henderson Iron Works & Supply Company subdivision of the village of Agurs, in the parish of Caddo.
 

 At the date of this sale, a $10,000 mortgage existed upon the property and was duly recorded. This mortgage .was executed February 18, 1926, to secure
 
 a demand, note
 
 in that amount, made by the defendant, Biggs, payable to his own order and by him indorsed in blank.
 

 Johnson purchased the lots “subject to the existing mortgage against said property.”
 

 On September 15, 1927, B. A. Bass, the plaintiff, as the holder of the demand note, brought suit in the district court of Caddo parish, and proceeded via ordinaria to collect the note.
 

 Johnson intervened in this suit, and set up several grounds as reasons why the special mortgage on the property should not be recognized and enforced, and prayed that Biggs, the vendor of the intervener, be called in warranty, and that plaintiff's suit be dismissed.
 

 Later the intervener filed a plea .of estoppel against plaintiff’s asserting the note and mortgage in the case.
 

 Judgment was rendered in favor of the intervener, dismissing plaintiff’s suit in so far as it attempts to enforce the mortgage against the property, and condemning plaintiff and defendant, in solido to pay the costs of the intervention. Plaintiff has appealed.
 

 The main foundation of the intervention, - as well as of the plea of estoppel, is an agreement entered into by Bass and Biggs on April 16, 1926, and duly recorded.
 

 In this agreement Biggs assigns, pledges, and rehypothecates to Bass the $10,000 mort
 
 *129
 
 gage note sued upon, with the understanding that the note is to be delivered to Bass by the Securities Sales Company, the holder of the note as collateral for a loan of $25,000 to the Southern States Bottling Company of Cedar Grove, La., “as soon as the same has fulfilled its purpose with that concern; that is, upon the payment of the loan of the Southern States Bottling Company.”
 

 It is further declared in this agreement that this contract and assignment shall continue in force “during the period of the loan in favor of the Southern States Bottling Company” and that “this assignment and pledge is irrevocable and in force and effect from date hereof on all parties concerned.”
 

 On May 14, 1927, prior to bringing the present suit, and a month after the purchase of the property by intervener, Bass and Biggs entered into a second agreement, which was also recorded, in yrfñch it was agreed by Biggs that the Securities Sales Company should deliver the $10,000 mortgage note to B. A. Bass “at any) time and on any conditions the said company may see fit to do.”
 

 The mortgage note was delivered to Bass, plaintiff, by the Securities Sales Company, a day or two before the present suit was filed.
 

 Intervener contends that Bass, the plaintiff, is estopped in this suit, by virtue of the first agreement, from declaring that the note and mortgage are due at this time, and that his demands should be rejected for the reason that intervener “believed in the binding force of said agreement and the above state of said demand note, herein sued on, and that he purchased the property covered by the mortgage and surrendered the note he held against the vendor of said property, leased the property to another third party for three years, and otherwise acted to his prejudice on the faith of said recorded agreement.”
 

 The loan of $25,000 by the Securities Sales Company to the Southern States Bottling Company was made March 11, 1925, and was payable in installments of $1,500 each every six months, with accrued interest on the whole obligation. This fact does not appear upon the face of the agreement of April 16, 1926, nor upon the face of the mortgage of $10,000.
 

 However, upon the face of the recorded agreement made between Bass and Biggs April 16, 1926, it is clear that this agreement was not made for the benefit of any. future purchaser of the property mortgaged, but was intended primarily and solely for the purpose of adjusting between the parties thereto their respective rights, and especially for the purpose of securing, by the assignment and pledge of the collateral mortgage of $10,000, the indebtedness of $7,500 due by Biggs to Bass, the plaintiff.
 

 It is clear, also, that the agreement could be changed at any time by the consent of the parties thereto, although denominated “an irrevocable assignment and pledge,” and declared to be intended to endure until the loan of $25,000 was paid the Securities Sales Company.
 

 It is evident that the Securities Sales Company, if it so desired, could release the collateral note
 
 a£
 
 any time to Biggs before the payment of its loan by the Southern States Bottling Company, whether there was any recorded agreement or not to that effect.
 

 That such an agreement cannot be made the basis of an estoppel is self-evident. It contains no stipulation pour autrui. The property mortgaged was not purchased by the intervener subject to such agreement, but “subject to the existing mortgage on said property,” as declared in the deed. The act of mortgage contains none of the stipulations upon which the intervener reliés to sustain his plea of estoppel.
 

 The fact that such agreement was recorded does not change the situation, as its registry was not required by law. Its stipulations were purely private and personal, and did not
 
 *131
 
 affect the rights of any third person at| the time they were made.
 

 The act of mortgage contains the pact de non alienando. Intervener purchased the property cum onere and without assumpsit of the mortgage debt. It is well settled that:
 

 “The purchaser of property with the pact de non alienando occupies no better position than the mortgagor, and cannot set up defenses which the latter could not.” La. Digest, vol. 5, Mortgages, par. Ill, p. 277.-
 

 It is clear that Biggs, the debtor and mortgagor, could not plead estoppel in this case, based upon the ground that the demand note was not due, because of the terms of the first agreement entered into by Bass and himself, since, by the terms of the second agreement made between the parties, Biggs consented that this note be delivered to Bass, his creditor, by the Securities Sales Company, which, at the time, held the note as collateral.
 

 Intervener, therefore, is without right to urge the plea of estoppel in the case at bar.
 

 Intervener, however, relies upon the case of N. Y. Life Insurance Co. v. Hymel et al., 164 La. 103, 113 So. 782.
 

 It was held in the case cited, quoting the syllabus:
 

 “Subsequent mortgagee”
 
 has “no right to assume that
 
 provision of recorded prior mortgage,
 
 giving mortgagor privilege to sell sugar house and apply proceeds to last of notes, if sale should bring not less than $15,000, would require that such sale could not be made for less sum with consent of prior mortgagee.”
 

 If
 
 a subsequent mortgagee
 
 cannot rely for protection upon such clause
 
 m a recorded prior mortgage as notice to the world
 
 that the sugar house and. its contents would not be sold at private sale for less than $15,000, it is difficult to conceive how the intervener, the purchaser of the mortgaged property, can reply in this ease upon a recorded agreement between the mortgagor and mortgagee as to the date when an assignment and pledge of a collateral demand note shall become effective, when such agreement is purely a private one, was subsequently changed by the parties, and is not incorporated either in the recorded act of mortgage or in the recorded act of sale by the mortgagor to the intervener. Especially is this the case since the intervener, as purchaser of the property under the pact de non alienando, is debarred from making any defense which could not be urged 'by Biggs, the mortgagor, and no such defense can be made by him in the present suit; i. e., that the demand note is not due and enforceable.
 

 There was no purchaser concerned in the Hymel Case. That case differs, therefore, from the case at bar, both as to the facts and as to the legal principle to be applied. Por these reasons, the plea of estoppel is without merit and is overruled. This disposes of the main issue in the present suit.
 

 2. The charges, in the petition of intervention, that plaintiff, B. A. Bass, is not the holder and owner of the note sued upon, and that plaintiff and defendant have conspired to deprive intervener of his property under the guise of judicial proceedings, are not sustained by the evidence in the case.
 

 The charge in the petition of intervention that the real amount due Bass was only $7,500, with 8 per cent, interest from April 16, 1926, is not available as far as the intervener is concerned, since the note for $10,000, sued upon, was pledged to Bass by Biggs, the mortgagor, and the surplus of the note, when collected, must be restored to Biggs by Bass, pledgee.
 

 It is provided in R. C. C. art. 3170:
 

 “If the credit which has been given in pledge becomes due before it is redeemed by the person pawning it, the creditor, by virtue of the transfer which has been made to him, shall be justified in receiving the amount, and in taking measures to recover it. AVhen received, he must apply it to the payment of the debt due to himself, and restore the surplus, should there bo any, to the person from whom he held it in pledge.”
 

 Payment of the demand note for $10,000 was made without avail in this case by Bass,
 
 *133
 
 the plaintiff and holder of the note, on June 30, 1927. As pledgee of the note, Bass had a clear right to sue to recover the full amount, and to pay the surplus, if any, to Biggs, the mortgagor and pledgor of the note.
 

 The trial judge did not pass specifically upon the plea of estoppel tendered hy intervener, hut dismissed plaintiff’s suit, after hearing the evidence as to all of the issues involved in the case.
 

 It is ordered that the judgment appealed from be annulled and reversed. It is now ordered that the plea of estoppel tendered by Melvin S. Johnson, intervener, be overruled, and that the intervention be dismissed, at the cost of intervéner.
 

 It is further ordered that there he judgment in favor of plaintiff, B. A. Bass, and against defendant, J. I. Biggs, in the full sum of $10,000, with 8 per cent, per annum interest thereon from June 30, 1927, until paid, together with 10 per cent, attorney’s fees on said amount, principal and interest, with recognition and enforcement of plaintiff’s special mortgage on the property incumbered according to law, and that plaintiff be paid, hy preference and priority over all persons, the amount of his claim, with interest, attorney’s fees, and costs, out of the proceeds of the property, when sold.
 

 O’NIEUL, C. J., concurs in the decree.