160 So. 618

**FIRST NAT. BANK OF SHREVEPORT v. HOUSEMAN (HOUSEMAN, Intervener).**

No. 33115.

March 4, 1935.

Rehearing Denied April 1, 1935.

Lester Wilson, of Shreveport, for intervener appellant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellee.

ROGERS, Justice.

Alleging that it was the holder in due course of a mortgage note executed and indorsed by G. A. Houseman, the First National Bank of Shreveport foreclosed the mortgage. The note was for $10,000, and the balance due thereon, after allowing the necessary credits, was $4,511.55.

Mrs. Maida Houseman, the divorced wife of the maker and indorser of the note, intervened in the proceeding and filed a third opposition, in which she alleged that subsequent to the execution of the note and mortgage, she was divorced from her husband, and that in the settlement of her community and paraphernal rights he conveyed to her the property covered by the mortgage. Opponent alleged that the mortgage note had been pledged to the plaintiff bank by Houseman as security for another note of $10,000 executed by the Houseman Sheet Metal Works, Inc., that there were certain credits due on the note which had not been allowed by the pledgee, and that, if the proper credits were allowed, the amount due on the note would be considerably reduced. She further alleged that the plaintiff bank had agreed to collect the rent from the mortgaged property and to apply the amounts collected to the reduction of the note, and that plaintiff's action in foreclosing the mortgage was unwarranted and premature. No injunctive relief was sought, and in due course the mortgaged property was sold to satisfy plaintiff's claim.

An exception of no right or cause of action filed by the bank was overruled, but on the merits the bank was successful in defeating the opponent's claim. From the judgment rejecting her demands, the opponent has appealed.

We think the judgment is correct. The record discloses the following facts, viz.: In order to obtain from the First National Bank of Shreveport a line of credit in the sum of $10,000 for the Houseman Sheet Metal Works, Inc., of which he was the president and principal stockholder, G. A. Houseman pledged to the bank a mortgage note indorsed by him together with the rent notes of tenants occupying the mortgaged property. The corporation's indebtedness to the bank was represented by its note for $10,000, which was personally indorsed by Mr. Houseman as well as being secured by the pledge of the rent and mortgage notes.

On June 18, 1930, the Houseman Sheet Metal Works, Inc., was placed in receivership; G. A. Houseman, its president, being appointed receiver. On April 10, 1931, the Houseman Sheet Metal Works, Inc., owed the First National Bank on its note the sum of $6,084.80. Later this amount was reduced to $4,511.55 by collections on the rent notes also pledged by Houseman to the bank as collateral security. On April 21, 1931, the bank purchased for $6,685 cash the assets of the re-

ceivership, consisting of real estate and personal property. The purchase was made for account of G. A. Houseman pursuant to a prior agreement entered into between him and the bank. As a result of this sale, the bank received from the receivership on account of its indebtedness a dividend of $1,859.98. Houseman instructed the bank to transfer to one S. L. Gorton the property which it had purchased at the receivership sale, which was done. The sale to Gorton was executed on April 15, 1931, and was for a consideration of $6,685, which was the exact amount paid for the property by the bank. The recitals of the deed show that $1,859.98 of the purchase price was paid in cash, and that for the balance of the purchase price Gorton, the vendee, executed his note in favor of the bank, the vendor, which note was secured by mortgage and vendor's lien on the property sold. But, as a matter of fact, no cash was actually paid; the bank agreeing to Houseman's request that the amount of $1,859.98 which it received from the receivership was to be recited in the deed as a cash consideration, and was to be secured by the $10,000 mortgage note.

Subsequently, Mrs. Maida Houseman, the wife of G. A. Houseman, obtained a divorce from her husband. On January 30, 1932, in settlement of her community and paraphernal rights, Houseman conveyed to his wife the mortgaged property; she assuming all mortgages bearing upon the property.

The dividend of $1,859.98 which the plaintiff bank received as a dividend from the receivership of the Houseman Sheet Metal Works, Inc., is the amount which the opponent claims should be credited on the $10,000 mortgage note of Houseman which was held and herein foreclosed upon by the bank.

After the assets of the Houseman Sheet Metal Works, Inc., were sold, the only parties interested in the mortgage note of G. A. Houseman were Houseman and the bank, the maker and holder, respectively, of the instrument. It would seem that these parties were within their rights in agreeing that the dividend of $1,859.98 received by the bank would be applied as a cash payment in the sale by the bank to Houseman, or to the person designated by him. In effect, the transaction was nothing more than a loan of $1,-859.98 by the bank to Houseman. And Mr. Singlust, the representative of the bank, testified that, as the Houseman $10,000 mortgage note was held by the bank as a general collateral obligation, it made no difference to the bank whether in payment for the property conveyed it took Houseman's note for $6,-685 or his note for that amount less the dividend of $1,859.98, as, in any event, the result was the same; the whole indebtedness being secured by the collateral $10,000 mortgage note.

But, be that as it may, Houseman, the maker and pledgor of the mortgage note, is not resisting the foreclosure of the mortgage nor making any claim that the proper credits have not been allowed on the mortgage note, as was done by the maker of the mortgage note in Crowley Bank & Trust Co. v. Hurd, 137 La. 787, 69 So. 175, cited by the opponent. And we fail to see how opponent can raise any question that the mortgagor has not seen fit to raise. Cf. Bass v. Biggs, 167 La. 126, 118 So. 861.

All the transactions between Houseman and the bank occurred prior to the transfer of the mortgaged property by Houseman to the opponent. As the act of mortgage contained the pact de non alienando, the subsequent acquisition by opponent of the mortgaged property was of no effect so far as the mortgage was concerned.

The pact de non alienando in a recorded act of mortgage makes a subsequent mortgage or other disposition of the property ipso jure void so far as the original mortgagee and his assigns are concerned. Maisonneuve v. Martin, 155 La. 938, 99 So. 704.

The proof in the record satisfies us that there is no substantial basis for plaintiff's claim that without the consent of the owner the rent of one of the mortgaged properties was reduced and that the plaintiff bank agreed to collect the rents and carry the mortgage note for an indefinite period.

For the reasons assigned, the judgment appealed from is affirmed.