183 So. 166

ZIMMER et al. v. FRYER et al.

No. 34831.

June 27, 1938.
Rehearing Denied Aug. 5, 1938.

George Montgomery and James J. Landry, both of New Orleans, for appellants.

Louis E. Jung, of New Orleans, for appellees.

O'NIELL, Chief Justice.

This is a suit to annul a cancellation of a mortgage on the ground that the cancellation was procured by fraud. The plaintiffs are the holders of the mortgage notes, being three notes for $1,000

each. The defendants are Newstar A. Fryer, who is the mortgagor and maker of the notes, and Vincenzo Caruso, who bought the mortgaged lot from Fryer at the time of the fraudulent release and cancellation of the mortgage. Fryer did not defend the suit. Caruso pleaded, first, that, at the time when he bought the lot from Fryer, the mortgage was cancelled by the recorder of mortgages, on the authority of an authentic act of release, made by one who claimed to be the holder of the mortgage notes, and by the notary public before whom the mortgage was granted, and, hence, that he, Caruso, had the right to rely upon the public records; second, that the release and cancellation of the mortgage were not fraudulent, but were in fact valid, because the notary public before whom the release was made, and who issued the certificate authorizing the recorder to cancel the mortgage, was the agent of the holders of the mortgage notes; third, that the plaintiffs have not sustained a loss by the cancellation of the mortgage on the lot that Caruso bought from Fryer, because the mortgage covers also another lot that belongs yet to Fryer and that may be worth the amount of the mortgage notes; fourth, that the plaintiffs are estopped to complain of the cancellation of the mortgage, because they allowed nearly seven years to elapse before bringing this suit, notwithstanding they were aware that he, Caruso, was in possession as owner of the lot from which the mortgage was cancelled, and were aware that he, Caruso, put improvements on the property to the extent of $1,000; and, fifth, that the mortgage notes held by the plaintiffs were prescribed. The case was tried on these issues, and the trial resulted in a judgment for the plaintiffs. Caruso is appealing from the decision.

■ The doctrine that a person in good faith buying real estate, or acquiring a mortgage or lien on it, may rely upon the public records in determining the ownership of the property, and its freedom from mortgages or liens, does not protect one who, in good faith, buys real estate or acquires a mortgage on real estate on which a prior mortgage has been cancelled fraudulently or without the consent of the holder of the mortgage or of the mortgage note or notes. The Civil Code, in articles 3371 and 3372, declares that a mortgage or lien can be cancelled only with the consent of the holder of the mortgage or mortgage note or notes, or by virtue of a judgment rendered against him, ordering the cancellation. In Freeland v. Carmouche, 177 La. 395, 405, 406, 148 So. 658, 661, 662, the court reviewed the decisions on the subject, and said:

"The rule seems arbitrary, but it is now well settled by the decisions of this court, that a cancellation of a mortgage by the recorder without the knowledge or consent of the holder of the negotiable mortgage note does not deprive him of his security, even with regard to a third party dealing with the property on his faith in the public record. Dreux, Executor v. Ducournau, 5 Mart., O.S., 625; Lafarge v. Morgan, 11 Mart., O.S., 462, 527; Macarty v. Landreaux, 8 Rob. 130; Hennen v. Sewell, 8 Rob. 216; Delavigne v. Gaiennie, 11 Rob. 171, 173; Mrs. De St. Romes

v. Widow Blanc, 20 La.Ann. 424, 96 Am. Dec. 415; Horton v. Cutler, 28 La.Ann. 331; Mechanics' Building Association v. Ferguson, 29 La.Ann. 548, 550; Morris v. Cain's Executors, 34 La.Ann. 657, 665; Levy v. Desposito, 133 La. 126, 62 So. 599; Gallagher v. Conner, 138 La. 633, 70 So. 539; Fisher v. Trimble, 161 La. 343, 108 So. 666."

■ The notary public who granted the release of the property from the mortgage had served as the agent of the holders of the mortgage notes in the collection of the interest on these and other mortgage notes; but he had no authority to grant a release of the mortgage. The granting of the release was not only done without the consent of the holders of the mortgage notes, but was done fraudulently. The notary public simply had his stenographer sign an instrument prepared by him, declaring that she, the stenographer, was the holder and owner of the mortgage notes, and that she granted the release, etc., when, as a matter of fact, the stenographer was neither the holder nor the owner of the mortgage notes. The notary public before whom the sale was made by Fryer to Caruso was not the notary public before whom the mortgage had been given by Fryer, and before whom the release was granted by the stenographer. The mortgage notes were not produced by the stenographer when she granted the release. It was incumbent upon Caruso or his attorney to have the mortgage notes produced and paraphed for identification with the release, when the release was granted.

■■ The plea that the plaintiffs have not sustained a loss, because only one of the two mortgaged lots was released from the mortgage, was urged as a plea of prematurity. The contention is that the plaintiffs, as holders of the mortgage notes, should foreclose the mortgage on the remaining lot, which Fryer did not sell to Caruso, before proceeding against the lot which Fryer did sell to Caruso. The plea is in reality a plea of discussion. A sufficient answer to it is that the mortgage is indivisible. A sale of one of the two mortgaged lots, by the mortgagor, did not make the mortgage divisible, or confer upon the buyer any right that the mortgagor did not have, because the act of mortgage contained the usual pact de non alienando.

■ The plea of estoppel is not well founded. There is no proof in the record that the holders of the mortgage notes knew that Caruso bought and was improving one of the mortgaged lots. The pact de non alienando protected the holders of the mortgage notes against having their rights impaired or affected in any way by any disposition that the mortgagor might make of the mortgaged property. Hence the holders of the mortgage notes were not concerned with any disposition that the mortgagor might make of the mortgaged property.

■ The mortgage notes would be prescribed by the lapse of five years, but for the fact that Fryer avoided the prescription by paying the interest on the notes annually. It is true that some of the interest payments were made after Fryer

sold one of the lots to Caruso; but the payments, nevertheless, prevented any and all of the debt from being prescribed. One who buys property that is incumbered with a mortgage in which there is a pact de non alienando cannot successfully plead that the debt for which the mortgage was granted is prescribed if the maker of the mortgage note or notes has waived prescription, even though the waiver was made after the mortgagor sold the property. In that respect, the buyer of the mortgaged property is in no better position than that of the mortgagor. Bass v. Biggs, 167 La. 126, 118 So. 861.

The judgment appealed from is affirmed.