## ALDRIDGE et al. v. REED et al.
### (PEYTON, Intervener).
### No. 6009.

Court of Appeal of Louisiana. Second Circuit.

June 28, 1939.

Turner B. Morgan and Ben F. Roberts, both of Shreveport, for appellants.

A. S. Drew, of Minden, for appellee defendant.

Goff & Goff, of Arcadia, for appellee Intervener.

TALIAFERRO, Judge.

On May 13, 1930, Mrs. Ada Peyton, wife of G. W. Peyton, a resident of Bienville Parish, to secure payment of her promissory note for $500, due and payable November 1, 1930, mortgaged unto E. L. Reed, to whom the note was delivered, the following described land in Bienville Parish, to-wit: N½ of NE¼, Sec. 20, N½ of NW¼, Sec. 21, Twp. 18N, Range 6W.

The act of mortgage was promptly registered. It contains the pact de non alienando.

On April 28, 1938, Mrs. Peyton executed, signed and had registered a deed of said land unto Mrs. Louella Holstun Aldridge and J. D. Holstun, Jr., residents of the City of New Orleans, wherein a price of $400 cash is expressed.

On May 24, 1938, Reed instituted foreclosure proceedings on the note and mortgage and impleaded Mrs. Peyton as defendant. He admits in his petition that a payment on the note of $100 was made on November 14, 1933. A credit therefor appears upon its reverse side.

On June 2, 1938, the ninth day following the institution of the foreclosure suit, Mrs. Peyton signed a renewal of the note in the following language, viz: "I hereby acknowledge the within note to be just, due and unpaid, and agree to pay same."

The land was seized by the sheriff and advertised for sale under the writ issued in the foreclosure proceedings.

On August 17, 1939, Mrs. Aldridge and J. D. Holstun, Jr., alleging themselves to be the owners of the land by virtue of the deed to them from Mrs. Peyton, instituted an injunction suit to stop the sale thereof. They alleged that the note foreclosed on had been extinguished by prescription of five years from its maturity, viz: November, 1930; that Mrs. Peyton, the maker, has made no payments thereon whatever; that the purported credit of $100 appearing on the reverse of the note of date November 14, 1933, was not made by her; that she did not recognize the existence of said note until after the same had been extinguished by prescription; that her purported acknowledgment of the note and her promise to pay same can have no effect on their rights and their ownership of the land, since they acquired it after said note had ceased to be of effect because prescribed.

A temporary restraining order and a rule to show cause why a preliminary injunction should not be granted to stop the sale of the land were issued on plaintiffs' application.

Reed coupled with his answer to the rule, exceptions of no cause and no rights of action, wherein the following defenses are urged, to-wit:

The plaintiffs have no interest, pecuniary or otherwise, in or to the land in question; and, in amplification of this allegation, avers that said land is now and at all times since deeds thereto were made to her, has been the property of Mrs. Peyton, the mortgagor; that the purported sale thereof to plaintiffs was a mere simulation, made without consideration and for the convenience of the grantor; that the vendees therein had no knowledge of the execution of the deed to them, nor its registry until some time thereafter; that Mrs. Peyton admits the existence of the note sued on and of the mortgage securing its payment; has acknowledged the same; has consented to the issuance of executory process thereon, and that she, being the owner of the property, is the only person in interest who has standing to challenge the enforcible character of said note and mortgage. Other allegations to support the charge that plaintiffs are not now nor ever have been the owners of said land are set up in the answer to the rule, but, in view of the conclusions we have reached on the plea of prescription it would be redundant to epitomize them. A general denial is also made to the material facts alleged upon by these plaintiffs. Defendant prayed that the deed from Mrs. Peyton to the plaintiffs be decreed a simulation and that her ownership of the land be recognized, etc.

A trial of the rule resulted in the issuance of a preliminary injunction of the purport prayed for.

Defendant's answer to the merits is virtually the same in substance as his answer to the rule, plus the additional averment that on trial of the rule both plaintiffs admitted under oath that they paid nothing for the land; had no knowledge that title thereto had been placed in their name by Mrs. Peyton, and have never been in possession thereof.

The conclusion is formed and alleged that because of these admissions by plaintiffs, they have admitted themselves out of court, and have confessed total lack of a proprietory interest in the land.

Subsequent to joinder of issue, Mrs. Peyton intervened. She joins Reed in the defenses urged by him with some supplements thereto. She prays, for the reasons assigned by her, that the purported sale from her to plaintiffs be decreed simulated, null and void; that the preliminary injunction be dissolved with costs.

The petition of the intervener was filed on the day the case was tried on its merits. It does not appear to have been served nor answered. Through counsel, the intervener participated in the trial, questioned witnesses and adduced testimony.

■ There was judgment recalling and setting aside the preliminary injunction,

and rejecting plaintiffs' demands. The sheriff was directed to proceed with the sale of the property. No reference is made in the judgment to the intervention nor to defendant's prayer that the deed to plaintiffs be decreed a simulation, etc. Plaintiffs, only, have appealed. Since the appeal has not been answered by the intervener, nor by defendant, the judgment may not here be revised or amended in their favor.

We are informed by briefs of both sides that the lower court held that the written acknowledgment of the note by Mrs. Peyton, although made nearly three years after it had prescribed (omitting from consideration the effect of the $100 payment made November 14, 1933), had the effect of reviving the note and of reinstating the effect of the mortgage securing same, so as to affect the property regardless of the sale thereof to plaintiff. In other words, that this acknowledgment restored to the note and mortgage their effectiveness, the same as though prescription had not accrued. It is said that this decision is based upon Zimmer et al. v. Fryer, 190 La. 814, 183 So. 166, and Bass v. Biggs, 167 La. 126, 118 So. 861.

Defendant cites and relies upon these cases largely to sustain his position that the lower court's ruling is correct.

Plaintiffs argue that the language of the court, in the Zimmer case, 190 La. at pages 820, 821, 183 So. at page 166, tending to support defendant's position as to the retroactive effect of the acknowledgment, is purely obiter dicta and that the Bass case is not pertinent nor in point.

It was obiter in the Zimmer case for the court to say [190 La. 814, 183 So. 168]: "One who buys property that is incumbered with a mortgage in which there is a pact de non alienando cannot successfully plead that the debt for which the mortgage was granted is prescribed if the maker of the mortgage note or notes has waived prescription, even though the waiver was made after the mortgagor sold the property. In that respect, the buyer of the mortgaged property is in no better position than that of the mortgagor. Bass v. Biggs, 167 La. 126, 118 So. 861." because, as we read that decision, the notes therein discussed had been kept from prescribing by payments of annual interest thereon by the maker. The court referred to none of the decisions included in the long line of cases holding to the contrary, which includes the following, to-wit: Larthet v. Hogan et al., 1 La.

Ann. 330; Shields v. Brundige, 4 La. 326; Succession of McGill, 6 La.Ann. 327; Succession of Kugler, 23 La.Ann. 455; McDaniel v. Lalanne, 28 La.Ann. 661; State v. Citizens' Bank, 33 La.Ann. 705; Giddens, Executor v. Madison Mobley et al., 37 La. Ann. 900; Jones v. Jones, 51 La.Ann. 636, 25 So. 368; Cecile Theriot, Widow, v. Heirs of Dugas, 2 La.App. 109.

The Bass case holds, as a fundamental principle, that: "Purchaser of mortgaged property with pact de non alienando occupies no better position than mortgagor, and cannot set up defenses which latter could not."

The facts of that case impelling this holding are in no respect analogous to those of the case at bar, nor to those in the Zimmer case.

We are not satisfied that the court intended by what is said in the Zimmer case to overrule the long line of authorities cited above to the contrary. The cases in this line of decision uniformly hold that under article 3466 of the Civil Code, the third possessor of mortgaged real estate may plead prescription against the mortgage and the obligation it secures; that when the obligation is extinguished by prescription, the mortgage falls with it; becomes dead, and that a subsequent acknowledgment of the obligation or waiver of prescription thereon does not revive or reinstate the mortgage to the prejudice of such third possessor.

We prefer to predicate a decision in this case upon the effect of the $100 payment as a means of interrupting the current of prescription on the note. If it did have this effect, the mortgage was preserved in its original force.

The land in question was in the year 1929, and for some years prior, owned by J. D. Holstun, the father of Mrs. Peyton and the grandfather of the plaintiffs. In 1929 he conveyed to Mrs. Peyton forty acres of the land and in the same year he conveyed to his son, Frank C. Holstun, the remaining one hundred twenty acres. A short time thereafter Frank C. Holstun transferred to Mrs. Peyton this one hundred twenty acre tract, thereby vesting in her, title to the entire one hundred sixty acres. Each deed expresses a cash consideration but this was not paid, nor did such a consideration motivate execution of the deeds by Holstun. Each deed was promptly recorded.

J. D. Holstun did not live long after these instruments were executed. One of his

sons, father of plaintiffs, bore his name. He was thereafter referred to as "Senior" because his own son, one of the plaintiffs, also bore the same name.

J. D. Holstun, Sr., father of plaintiffs, it is established, when the above mentioned deeds were executed, and since, was heavily involved financially. Many judgments were of record against him. His father desired to give to him this one hundred sixty acre tract (possibly as his interest in the father's estate) but in view of the son's financial condition, and desiring to protect his ownership of the land against his creditors, conveyed the forty acre tract to Mrs. Peyton and the one hundred twenty acre tract to Frank C. Holstun, to be held by them for the son. Frank C. Holstun, for the same purpose, conveyed the one hundred twenty acres to Mrs. Peyton. Therefore, Mrs. Peyton was never the true owner of the land, as all of the family well understood, but held it for her brother.

Mrs. Peyton testified she executed the deed to plaintiffs at the suggestion of J. D. Holstun, Sr., their father.

■ Testimony to prove the above related facts was objected to on several grounds, but we are of the opinion that it was admissible and should be considered by us in determining the effect of the payment on the note and the question vel non of agency.

J. D. Holstun, Sr., negotiated the loan with Reed and offered a first mortgage on the land as security. When the note was delivered to Reed he paid to Holstun the $500 in cash.

Mrs. Peyton knew that her brother paid $100 on the note and she testified that he did so, by and with her approval. Reed testified that he primarily looked to the land for his money. Holstun testified, and there is good reason for him so doing, that he considered the note his obligation since he received the proceeds of the note which his land was mortgaged to secure.

Aside from Mrs. Peyton's admission that Holstun made the payment of $100 with her authority and approval, the circumstances of the case irresistibly force the conclusion that from and after the consummation of the loan such authority was unquestionably conferred upon him. She never expected to discharge the debt from personal funds, and, while exposing herself to personal responsibility on the note, really expected Holstun to protect her thereon. This being true, can it be reasonably doubt-

ed that he did have her full consent to make payments on the note as his condition would allow? To ask the question, seems to us, is to answer it.

We think the facts of this case fully satisfy Article 2997 of the Civil Code, which requires that the mandate "to contract a loan or acknowledge a debt" must be express and special.

In making the payment on the note, Holstun, in a way, was acting in a dual capacity. To an extent he was acting for himself; reducing a liability for which his property was mortgaged to secure, and also, to the extent of reducing his sister's personal liability, he acted in the role of agent by and with her authority and approval.

Appellants rely upon Gaillardanne v. Locascio, La.App., 166 So. 505, and Guaranty Bank & Trust Co. v. Heiderich, 163 La. 957, 113 So. 161. In the latter case it was definitely held that: "A part payment on a note, to toll the statute of limitations, must be made by the debtor or by another under his authority." The Gaillardanne case upholds this same principle.

These holdings do no violence to the conclusion we have reached in the present case, in view of its peculiar facts.

■ The pivotal point in all such cases is whether the person making the payment has authority to do so, because unless such authority is present, the acknowledgment of the obligation which the payment ordinarily implies is lacking. If such authority is present, the agent's acts become the acts of the principal and are fully binding upon him.

■ The preeminent point in the Guaranty Bank case, which distinguishes it completely from the instant case, is that the sawmill company for whose account the defendant mortgaged his property and negotiated his note, paid interest thereon without the maker's knowledge or consent, whereas it was only authorized to pay off the note at maturity. The court very properly held that the note, in these circumstances, could not be kept alive indefinitely to the prejudice of the maker. Not so in the instant case. Here, both the mortgagor, and the true owner of the land, who feels morally, if not legally, bound for the debt, are insisting that the note has been kept alive and are willing to see the land sold to discharge both obligations. They are opposed by persons who have only a paper title to the mortgaged property, and who,

under oath, confess not having given nor paid anything whatever therefor.

For the reasons herein assigned, the judgment appealed from is affirmed, with costs.

DREW, J., recused.