947 F.2d 182
 WHITNEY NATIONAL BANK, Plaintiff-Appellant, Cross-Appellee,
v.
Francis J. DEMAREST, Jr., Recorder of Mortgages, Parish of
Orleans, Defendant,
Resolution Trust Corporation Conservator of Fountainebleau
Federal Savings Bank, Defendant-Appellee, Cross-Appellant.
 No. 91-3029.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 18, 1991.
 
 Talmage M. Watts, F. Frank Fontenot, Edward J. Pointer, Jay Corenswet, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for plaintiff-appellant, cross-appellee.
 Ann Horton-Breaux, R. Patrick Vance, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant-appellee, cross-appellant.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before KING, JOHNSON and EMILIO M. GARZA, Circuit Judges.
 KING, Circuit Judge:
 
 
 1
 This case is an action to rank competing liens between Whitney National Bank ("Whitney") and the Resolution Trust Corporation ("RTC"), as receiver (formerly conservator) of Fountainebleau Federal Savings Bank ("Fountainebleau"). Whitney appeals from a summary judgment by the district court holding that the promissory note held by Whitney had prescribed, thus extinguishing its accessory vendor's lien. We find that summary judgment was appropriately granted, and therefore affirm the judgment of the district court.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 First Homestead Savings Association, now Secor Bank ("First Homestead"), was the holder of a promissory note payable to First Homestead ("First Homestead Note" or "Note"), dated November 26, 1980, given for the purchase of a number of condominium units. The maker of the First Homestead Note was Tall Timbers Townhomes, Inc. ("Tall Timbers"), and the Note was personally endorsed by Sidney J. Artigues ("Artigues"), Daniel W. Osborne ("D. Osborne"), Keith Dufour, and William F. Osborne, Jr. The First Homestead Note was secured by an Act of Credit Sale (the "First Homestead Vendor's Lien" or "Vendor's Lien") recorded in the mortgage records of the Parish of Orleans, Louisiana, on December 2, 1980. The First Homestead Note was to be paid in eleven monthly installments, with the final installment of the principal balance due on December 1, 1981. On February 10, 1982, Tall Timbers executed an Act of Amendment of Mortgage and Vendor's Lien providing that the entire balance of principal and interest would be due and payable on or before December 1, 1982.
 
 
 3
 On September 3, 1982, Tall Timbers, Artigues, and D. Osborne executed a collateral mortgage note, a collateral mortgage (the "Fontainebleau Mortgage"), and a hand note in the amount of $300,000 in favor of Fontainebleau. The Fontainebleau Mortgage was recorded in the mortgage records of the Parish of Orleans on September 7, 1982. The First Homestead Note and the Fontainebleau Note are secured by the same property.
 
 
 4
 On July 30, 1984, Tall Timbers made an interest payment on the First Homestead Note. That payment was Tall Timber's last payment to First Homestead on the First Homestead Note. Tall Timbers subsequently defaulted on the Note, and First Homestead decided to foreclose. On December 27, 1984, to avoid foreclosure by First Homestead on the First Homestead Note, Phillip Gattuso, D. Osborne, and Artigues formed GOA Partnership ("GOA"), which was to purchase the property encumbered by the First Homestead Vendor's Lien and the Fontainebleau Mortgage. GOA contacted Whitney to obtain financing for the purchase. Whitney avers that a Fountainebleau representative agreed with representatives of GOA to subordinate Fountainebleau's second mortgage to a new mortgage in favor of Whitney. This oral agreement, according to Whitney, was designed to keep Fountainebleau in its position as second mortgagee, and to allow Whitney to be subrogated to the rights of First Homestead as first mortgagee.
 
 
 5
 On December 31, 1984, Whitney loaned money to GOA, and GOA executed a promissory note, a collateral mortgage note, and a collateral mortgage in favor of Whitney. GOA then purchased the condominium units from Tall Timbers and delivered the purchase money to First Homestead. The Act of Sale by Tall Timbers to GOA expressly recites the purchase price of $100, and notes that the property was purchased "subject to" the unpaid balances of the First Homestead Vendor's Lien and the Fontainebleau Mortgage. Whitney's mortgage from GOA was recorded behind the Fountainebleau Mortgage. The purchase money was in the form of a check, drawn on GOA's account at Whitney, payable to the order of First Homestead. First Homestead, allegedly without the knowledge or consent of Tall Timbers, GOA, or Whitney, stamped the First Homestead Note "canceled," and returned it to a partner of GOA. GOA then pledged and transferred the First Homestead Note to Whitney. The public records of the Parish of Orleans now reflect that the original First Homestead Vendor's Lien has been canceled. Whitney contends that the cancellation resulted from an allegedly false Act of Partial Release, which was drafted by Fountainebleau's notary and executed by First Homestead on or about June 30, 1988, without the knowledge or consent of Tall Timbers, GOA, or Whitney.
 
 
 6
 Fountainebleau was subsequently taken over by the RTC, who refused to honor the alleged oral agreement to subordinate. Whitney filed a petition for writ of mandamus ("Petition") against Francis J. Demarest, Jr. ("Demarest"), in his capacity as Recorder of Mortgages for the Parish of Orleans, in Civil District Court for the Parish of Orleans, Louisiana, seeking reinstatement of the First Homestead Vendor's Lien and erasure of the Act of Partial Release pertaining to that lien from the public records. The Petition alleged that the Act of Partial Release was improper because Whitney, as holder of the First Homestead Note, had not consented to execution of the Act of Partial Release.
 
 
 7
 Subsequently, Fountainebleau intervened and opposed Whitney's Petition. Fontainebleau also filed a separate petition for writ of mandamus against Demarest, seeking cancellation of the First Homestead Vendor's Lien. On Fontainebleau's motion, the two mandamus proceedings were consolidated.
 
 
 8
 On or about June 28, 1989, Whitney filed a First Supplemental, Amended and Restated Petition adding Fontainebleau as defendant. This petition alleged that Whitney was the holder, as pledgee, of the First Homestead Note as a result of a pledge of the Note by GOA. It also alleged that GOA entered into an oral agreement with Fontainebleau in which Fontainebleau agreed to subordinate its collateral mortgage to Whitney's subsequent collateral mortgage.
 
 
 9
 The RTC removed the case to federal court. On September 1, 1989, the RTC filed a motion to dismiss Whitney's First Supplemental, Amended and Restated Petition, which Whitney opposed. On January 17, 1990, Whitney moved for leave to amend the complaint. The amended complaint, filed February 13, 1990, alleged that GOA was legally subrogated to First Homestead's Vendor's Lien and that GOA assigned all rights thereunder to Whitney.
 
 
 10
 By minute entry dated April 4, 1990, the district court granted in part and denied in part the RTC's motion to dismiss. The district court dismissed Whitney's claims that were premised on enforcement of the alleged oral agreement pursuant to which Fontainebleau allegedly agreed to subordinate its mortgage, but did not dismiss Whitney's claims based upon the alleged assignment of GOA's subrogation rights and pledge of the First Homestead Note to Whitney.
 
 
 11
 On October 2, 1990, Whitney and the RTC filed cross-motions for summary judgment. By minute entry dated December 7, 1990, the district court issued reasons for judgment in favor of the RTC on the basis that the First Homestead Note, through which Whitney claimed a superior lien ranking, had prescribed, resulting in extinguishment of the accessory First Homestead Vendor's Lien. On December 14, 1990, the court granted the RTC's motion for summary judgment, and dismissed Whitney's claims with prejudice. The judgment provided that Fontainebleau's mortgage on the Tall Timbers property was superior to any lien or mortgage held by Whitney, and ordered Demarest to cancel the First Homestead Vendor's Lien. Whitney timely filed its appeal to this court, and the RTC timely filed a cross-appeal.
 
 II. DISCUSSION
 
 12
 This court reviews a district court's grant of summary judgment de novo, and determines whether the issues presented in the record entitle the movant to judgment as a matter of law. Lowery v. Illinois Central Gulf R.R., 891 F.2d 1187, 1190 (5th Cir.1990). When so doing, this court views the evidence and draws inferences in favor of the party resisting the motion. British Caledonian Airways, Ltd. v. First State Bank, 819 F.2d 593, 597 (5th Cir.1987); BAW Mfg. Co. v. Slaks Fifth Ave., Ltd., 547 F.2d 928, 930 (5th Cir.1977).
 
 
 13
 On appeal, Whitney contends that Tall Timbers on three instances acknowledged the First Homestead Note in a manner sufficient to interrupt prescription.[1] Whitney also contends that the district court correctly held that Whitney was subrogated to the First Homestead Vendor's Lien. The RTC, on cross-appeal, argues that the "acknowledgments" cited by Whitney were insufficient to interrupt prescription, and that GOA had waived its right of subrogation to the First Homestead Vendor's Lien.
 
 
 14
 Both parties agree that the issue of whether or not the First Homestead Note has prescribed determines the priority of liens between Whitney and the RTC.[2] The RTC contends that the First Homestead Note prescribed on July 30, 1989, five years after the last payment by its maker, Tall Timbers.[3] If this be the case, the accessory obligation to the Note, the First Homestead Vendor's Lien, has therefore been extinguished by prescription of the underlying Note,[4] and the Fountainebleau Mortgage (now held by the RTC), previously second in priority to the First Homestead Vendor's Lien, would assume primacy. Whitney, on the other hand, argues that prescription on the First Homestead Note was interrupted by acknowledgment of the debt on three separate instances.
 
 
 15
 The party claiming interruption of prescription bears the burden of proving that interruption occurred. Chauser v. Babin, 412 So.2d 1005, 1007 (La.1982); Bahr v. Wood, 507 So.2d 4, 5-6 (La.App.2d Cir.1987). We will address each alleged instance of interruption set forth by Whitney seriatim.
 
 
 16
 Whitney contends that language contained in the Act of Sale between Tall Timbers and GOA constituted an acknowledgment by Tall Timbers of the First Homestead Note sufficient to interrupt prescription. Language in the Act of Sale provides, in pertinent part:
 
 
 17
 This sale is made and accepted for and in consideration of the price and sum of ONE HUNDRED and NO/100 ($100.00) DOLLARS
 
 
 18
 * * * * * *
 
 
 19
 AND AS ADDITIONAL CONSIDERATION, the vendee herein accepts the herein described property subject to the unpaid balances of the following mortgages:
 
 
 20
 1. That vendor's lien in the sum of $1,028,400.00, in favor of First Homestead and Savings Association, dated November 26, 1980 ... which has an approximate unpaid balance of $235,000.
 
 
 21
 2. That collateral mortgage in the amount of $2,000,000.00 payable at Fontainebleau Savings and Loan Association ... which has an unpaid balance of $_____ (emphasis added).
 
 
 22
 According to Whitney, this acknowledgment by Tall Timbers was a solemn, written recital contained in an authentic act, passed before a notary and two witnesses and filed in the records. It specifically recognizes, argues Whitney, not only that the debt existed, but the amount left unpaid.
 
 
 23
 Whitney correctly notes that acknowledgment interrupting prescription requires no specific form. Acknowledgment "may be made verbally, in writing, by partial payment, by payment of interest, by pledge, or in other ways. It may be tacit or implicit, or inferred from the facts and circumstances." Lake Providence Equip. Co. v. Tallulah Prod. Credit Ass'n, 257 La. 104, 241 So.2d 506, 509 (1970); see also Flowers v. U.S. Fidelity & Guar. Co., 381 So.2d 378, 382 (La.1979). However, while acknowledgment may take many forms, "[t]o interrupt prescription, an acknowledgment must be made with the intention to interrupt prescription." Bahr, 507 So.2d at 5; Richard Guthrie & Assocs. v. Stone, 562 So.2d 1071, 1072 (La.App.4th Cir.), writ denied, 567 So.2d 107 (La.1990); Autin v. Parish of LaFourche, 423 So.2d 98, 100 (La.App.1st Cir.1982); Emery v. Cabral, 400 So.2d 340 (La.App.4th Cir.) ("acknowledgment must be accompanied by or coupled with a clear declaration of intent to interrupt the prescription then running"), writ denied, 405 So.2d 533 (La.1981). The burden of proving that prescription has been interrupted rests with the party seeking to prove the interruption. Bahr, 507 So.2d at 5. Proof of interruption of prescription must be "clear, specific and positive." Landry v. Guidry, 210 La. 194, 26 So.2d 695, 697 (1946); Gibson Greeting Cards, Inc. v. Cabibi, 237 So.2d 897, 898 (La.App.4th Cir.1970).
 
 
 24
 It is not clear under Louisiana law whether reference to the Vendor's Lien in the Act of Sale would suffice as a "clear, specific and positive" acknowledgment of the underlying Note. The Louisiana Supreme Court in Meridian Fertilizer Factory v. Collier, 193 La. 815, 192 So. 358, 360 (1939), suggested that a recitation such as that in the Act of Sale between GOA and Tall Timbers is insufficient to interrupt prescription on a note. In Collier, a partnership executed three promissory notes secured by a mortgage on real property. After the partnership filed for bankruptcy, the trustee filed an application to sell the mortgaged property, and after obtaining approval, sold the property to Delphia Collier. The Act of Sale declared that the sale was made "subject to" a mortgage held by Meridian. More than five years after maturity of the notes, Meridian brought suit against Collier seeking seizure of the property. Collier claimed that the notes had prescribed, but Meridian argued that prescription was interrupted or suspended by the language in the Act of Sale. In addressing this issue, the court stated:
 
 
 25
 Inasmuch as Mrs. Collier did not assume the payment of the mortgage debt when she bought the land from the trustee in bankruptcy, we doubt that the declaration in the deed that the land was sold subject to the mortgage was a sufficient acknowledgment to interrupt the prescription of five years.
 
 
 26
 Id., 192 So. at 360.[5] Similarly, GOA did not recite that it assumed payment of the Note.
 
 
 27
 While recognizing that this statement in Collier is dicta, we also recognize that the "doubt" expressed by the Louisiana Supreme Court, that such a recitation constitutes acknowledgment of the debt, is well-founded. Mere notice to the purchaser of property that the property is sold "subject to" a lien held by a third party is not a positive and specific acknowledgment that the debt will be paid, and is not clearly made with the intention to interrupt prescription. See Bahr, 507 So.2d at 6; Autin, 423 So.2d at 100 ("The recognition of the mere existence of a disputed claim is not an acknowledgment within the contemplation of [the Civil Code]."); Richard Guthrie & Assocs., 562 So.2d at 1072 (recognition of the mere existence of a disputed claim will not effect an interruption of prescription); Emery, 400 So.2d at 340 (same); Lake Providence, 241 So.2d at 509 (quoting Goodrich v. Case, 68 Ohio St. 187, 67 N.E. 295 (1903)) ("The note must be acknowledged as existing, and the promise must be to pay such existing note."); see also Sliman Realty Corp. v. Sliman's Estate, 225 La. 521, 73 So.2d 447 (1954) ("we do not find that the entry of a note or bill on the books of a party has ever been considered as interrupting prescription."). We therefore hold that, under Louisiana law, the reference to the First Homestead Vendor's Lien in the Act of Sale executed between Tall Timbers and GOA is insufficient to interrupt the prescription of the First Homestead Note.
 
 
 28
 Next, Whitney contends that exceptions filed in Louisiana state court which allude to the First Homestead Note acknowledge the debt and interrupt prescription. Fountainebleau filed an action in state court against Tall Timbers, seeking recognition of its mortgage. On November 9, 1988, Tall Timbers filed exceptions in that action, which state, in pertinent part, as follows:
 
 
 29
 Prior to the filing of this lawsuit, plaintiff, Fountainebleau Federal Savings Bank, filed a petition for Writ of Mandamus in the Civil District Court for the Parish of Orleans, ... wherein they [sic] have requested that the Recorder of Mortgages for the Parish of Orleans erase from his records a first mortgage which is presently held by the Whitney National Bank (emphasis added).
 
 
 30
 Whitney argues that the "first mortgage which is presently held by Whitney National Bank" is the First Homestead Vendor's Lien. This language, contends Whitney, is therefore a clear acknowledgment by Tall Timbers of the First Homestead Note. Furthermore, argues Whitney, because a mortgage is unenforceable without an underlying debt,[6] the acknowledgment of the Vendor's Lien also acknowledges the underlying Note.
 
 
 31
 We agree with the RTC that this language does not constitute a clear acknowledgment by Tall Timbers of the debt due on the First Homestead Note.[7] Neither First Homestead nor the First Homestead Note is mentioned in the exceptions. The language used evidences no intent to pay the debt (which had already been paid by GOA) or to interrupt prescription on the Note. The exceptions refer only to Whitney's mortgage on the property. Whitney, moreover, has a collateral mortgage on the property in its own right. This reference to Whitney's mortgage is therefore clearly insufficient to interrupt prescription on the First Homestead Note. Thus, Whitney's contention, that the allusion to the First Homestead Note in the exceptions interrupts prescription, is without merit.
 
 
 32
 Finally, Whitney claims that the First Homestead Note was acknowledged by an allonge signed by Artigues on December 28, 1989, in his capacity as President of Tall Timbers. This court need not address whether the signing of the allonge constitutes acknowledgment of the Note sufficient to interrupt prescription. Because we have found that neither the Act of Sale nor the exceptions filed in the state court action interrupted the prescription on the Note, the Note prescribed on July 30, 1989, five years after the last payment on the Note by its maker, Tall Timbers, and five months before execution of the allonge. Upon prescription on the First Homestead Note, the Vendor's Lien extinguished, and cannot be revived by a later acknowledgment or renunciation of prescription.[8] See Aldridge v. Reed, 190 So. 845, 847 (La.App.2d Cir.1939) ("when the obligation is extinguished by prescription, the mortgage falls with it; becomes dead, and ... a subsequent acknowledgment of the obligation or waiver of prescription thereon does not revive or reinstate the mortgage...."). The execution of the allonge, therefore, could not interrupt prescription on the First Homestead Note because the Note had already prescribed.
 
 
 33
 The RTC contends that the district court erred in holding that Whitney was subrogated to the rights of First Homestead. Subrogation of Whitney to the rights of First Homestead under the Vendor's Lien is, however, of little consequence in this action. Even if GOA was subrogated to the rights of First Homestead, and subsequently assigned its rights under the First Homestead Vendor's Lien to Whitney, the Vendor's Lien has been extinguished because the underlying Note prescribed. See Louisiana Civil Code Article 3285 ("where the principal debt is extinguished, the mortgage disappears with it"). The issue of Whitney's subrogation to extinguished rights is irrelevant.
 
 III. CONCLUSION
 
 34
 For the reasons stated above, the judgment of the district court is, in all respects, AFFIRMED.
 
 
 
 [1]
 Louisiana Civil Code Article 3464 comment (b) provides: "liberative prescription is interrupted when the debtor acknowledges the right of the creditor."
 
 
 [2]
 Whitney does not raise the issue on appeal, but argued before the district court that the RTC did not have standing to allege prescription of the First Homestead Note. We note that under Louisiana law, prescription is not a personal defense. Article 3453 of the Louisiana Civil Code provides:
 Creditors and other persons having an interest in the acquisition of a thing or in the extinction of a claim or of a real right by prescription may plead prescription, even if the person in whose favor prescription has accrued renounces or fails to plead prescription.
 In Ernest M. Loeb Co., Inc. v. Avoyelles Drainage District No. 8, 60 F.Supp. 296, 301 (W.D.La.1945), the court stated that
 although ordinarily prescription is a defense which the debtor alone may plead or waive, as he sees fit, nevertheless his creditor who can show that his interest would be benefited by the claim of another creditor being held prescribed, may under such circumstances plead prescription himself against that other creditor of his debtor.
 Id. The district court correctly found that the RTC has an interest in the extinguishment of any alleged rights under the First Homestead Note and its accessory Vendor's Lien, and may, therefore, plead prescription on the Note even if (as is the case here) Tall Timbers chooses not to do so.
 
 
 [3]
 Louisiana Civil Code Article 3498 provides: "Actions on negotiable instruments, and on promissory notes whether negotiable or not, are subject to a liberative prescription of five years. This prescription commences to run from the day payment is exigible."
 
 
 [4]
 Louisiana Civil Code Article 3285 provides, in pertinent part: "where the principal debt is extinguished, the mortgage disappears with it."
 
 
 [5]
 The court in Collier went on to hold, however, that the listing of the debt on the partnership's bankruptcy schedule was sufficient acknowledgment to interrupt prescription. In the instant case, Artigues and D. Osborne, personal indorsers of the First Homestead Note, did not list the First Homestead Note as a contingent liability on their bankruptcy schedules
 
 
 [6]
 Louisiana Civil Code Article 3284 states: "The mortgage is accessory to a principal obligation which it is designed to strengthen, and of which it is to secure the execution." Article 3285 states, in pertinent part: "Consequently, it is essentially necessary to the existence of a mortgage, that there shall be a principal debt to serve as a foundation for it. Hence it happens, that in all cases where the principal debt is extinguished, the mortgage disappears with it."
 
 
 [7]
 Indeed, Whitney appears to place little credence in this argument. In its Reply Brief, Whitney states: "December 31, 1989, is the end of the five-year prescription period which began on December 31, 1984, when Tall Timbers acknowledged its debt in the authentic act of cash sale." If Whitney truly believed that the exceptions acknowledged the Note, then Whitney would have argued that November 9, 1988, the date the exceptions were filed, began a new prescription period
 
 
 [8]
 The RTC raises the issue (and the district court apparently considered) whether execution of the allonge constituted a valid renunciation of prescription on the Note. However, inasmuch as Whitney did not argue before the district court or this court that the signing of the allonge was a renunciation of prescription, we need not address the issue